**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHAKHRUZ KAKHRAMON UGLI KHOLMURODOV, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) Case No. CIV-26-678-SLP |
| WARDEN CIMARRON CORRECTIONAL FACILITY, et al., | ) ) ) ) |
| Respondents.[1] | ) ) |

**REPORT AND RECOMMENDATION**

Petitioner Shakhruz Kakhramon Ugli Kholmurodov, a noncitizen[2] and Uzbekistani national proceeding pro se, filed a Petition for Writ of Habeas Corpus, Doc. 1, and supplement to the petition, Doc. 2, (together, the "Petition") challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States Chief District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 4. The undersigned set an expedited briefing schedule, Doc. 6, and the Petition is at issue. Petitioner also filed a Motion for Temporary Restraining Order. Doc. 2.

---

[1] Todd Blanche was announced as Acting Attorney General on April 2, 2026. He replaces Pamela Bondi and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

For the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within five business days at which the government bears the burden of proof or otherwise to release him if there is no hearing within that time. Further, Petitioner's Motion for Temporary Restraining Order should be denied as moot.

I.    **Background**

Petitioner, a citizen of Uzbekistan, entered the United States on May 23, 2023, without inspection or admission near Tecate, California, and was taken into immigration custody on the same day.  Pet. at 7; Resp. at 2; Doc. 8-2 at 2.  Also on May 23, 2023, Petitioner was released on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226.  Resp. at 2; Doc. 8-2 at 2.  On October 12, 2023, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  Resp. at 2; Doc. 8-1 at 1.  On January 31, 2026, Petitioner filed an application for asylum, which remains pending.  Resp. at 2; Doc. 8-4 at 1 (Asylum Application).

On March 17, 2026, ICE re-detained Petitioner after taking custody of him from the Oklahoma Highway Patrol.  Resp. at 2; Doc. 8-5 at 2.  Petitioner alleges he was not given prior notice before his re-detention.  Doc. 2 at 3.  The undersigned presumes ICE detained Petitioner under 8 U.S.C. § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I & N Dec. 216, 229 (BIA 2025) (concluding § 1225(b)(2)(A) covers inadmissible noncitizens who

lived unlawfully in the United States for longer than two years without apprehension).[3]

Respondents allege Petitioner did not request a bond hearing.  Resp. at 4.  Such a request, though, would likely be futile because all IJs are subject to the binding precedent of *Hurtado*, which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma.  Pet. at 1.  He remains detained there.  *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited May 8, 2026).

## II.    Petitioner's Claims

Petitioner asserts three counts in his Petition.

- **Count I: Unlawful Detention without Due Process.**  Petitioner alleges he "was taken into ICE custody without prior notice or warning" and "was not provided with an individualized determination of whether detention was necessary or justified," which violates his due process.  Pet. at 6-7; *see also* Doc. 2 at 3-4 (alleging same).

- **Count II: Denial of Individualized Bond Hearing under 8 U.S.C. § 1226(a)**.  Petitioner alleges he is "detained by ICE under an immigration hold without receiving a bond hearing at which the government bears the burden of demonstrating that detention is justified" and "no individualized assessment of his circumstances has been conducted before a neutral adjudicator."  Pet. at 7 (citation modified); *see also* Doc. 2 at 4 (alleging he is entitled to "the opportunity to apply for release on bond or conditional parole" under § 1226(a) and that no opportunity was provided).

---

[3] Neither party provides clear evidence in the record as to which provision ICE used to re-detain Petitioner.  Based on the context of the Response, *see* Resp. at 3, and the fact that ICE's current policies typically call for detention of noncitizens similarly situated to Petitioner under § 1225(b)(2)(A), *see Hurtado*, 29 I & N Dec. at 229, the undersigned presumes Respondents relied on that statute to detain him.

- **Count III: Prolonged and Arbitrary Detention**.  Petitioner alleges he "was arrest without notice and transferred to a facility in a state where he has no family, community ties, or prior connection."  Pet. at 7; *see also* Doc. 2 at 5 (alleging his confinement "has become arbitrary and punitive" in violation of the Due Process Clause).

Liberally construed, the undersigned reads Petitioner to allege (1) the Immigration and Nationality Act ("INA") and (2) due process entitle him to an individualized bond hearing at which the government bears the burden of proving his continued detention is justified. He asks the Court to "issue a writ of habeas corpus" requiring Respondents to release him "on reasonable conditions of supervision pending removal proceedings" or "grant all other relief the Court deems just and proper."  Pet. at 8.

### III.   Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### IV.   Analysis

#### A.   Section 1226(a) applies to Petitioner's detention.

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226.  Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."  *Id.* § 1225(a)(1) (citation modified).  Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining

4

immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."  If Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing.  On the other hand, Section 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing.  *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Petitioner alleges he "has not been brought before an Immigration Judge for a bond hearing" under § 1226(a) and "no individualized determination has been made regarding whether Petitioner poses a flight risk or a danger to the community."  Doc 2 at 3-4.  He further alleges he has not been given the "opportunity to demonstrate that he is entitled to release on bond or conditions of supervision."  *Id.* at 3.  Respondents do not seem to dispute that Petitioner is subject to § 1226(a) but allege "ICE [Enforcement and Removal Operations] had the discretion to revoke Petitioner's release on his own recognizance at any time, and it did so" under § 1226(b).  Resp. at 3.  Section 1226(b) authorizes immigration officials to "revoke a bond or parole authorized" under § 1226(a), rearrest the noncitizen "under the original warrant," and detain him.  Respondents, though, provide no record evidence that Petitioner was actually re-arrested under the original warrant or had his release revoked under § 1226(b).  Respondents further claim Petitioner "failed to request a bond hearing," so "he cannot argue that he has been denied one."  Resp. at 4.

Given Respondents' factually unsupported argument to apply § 1226(b), ICE's current policies to detain similar petitioners under § 1225(b)(2)(A), and Petitioner's argument that § 1226(a) governs his detention, the Court must first determine what statute governs Petitioner's detention before determining whether he is entitled to relief. To that end, the undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue. For the reasons stated below, and adopting this Court's reasoning in *Lopez v. Corecivic Cimmaron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *3-7 (W.D. Okla. Jan. 21, 2026), the undersigned recommends the Court grant the Petition in part to the extent Petitioner seeks a bond hearing under § 1226(a).

First, the INA limits the scope of the term "seeking admission" in § 1225(b)(2)(A) so that section does not apply to noncitizens living in the United States when detained. Section 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States." *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025). If all "applicants for admission" are also "seeking admission," then § 1225(b)(2)(A)'s inclusion of the phrase "seeking admission" would be redundant and superfluous. *Lopez*, 2026 WL 165490, at *4. The undersigned best understands mandatory detention under § 1225(b)(2)(A) to apply to arriving noncitizens actively seeking admission at or near the border or port of entry—not those like Petitioner who have resided in the United States for years and were not arrested when trying to cross the border.

6

In addition, the legislative history and recent amendment of § 1226 indicate that section applies to noncitizens who previously entered without inspection and were residing in the United States when apprehended. Notably, after passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Department of Justice explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified). Further, Congress' recent amendment to § 1226 mandating detention for certain criminal noncitizens renders Respondents' interpretation of § 1225(b)(2)(A) superfluous.

Finally, this Court, Judge DeGiusti, Judge Jones, Judge Russell, Judge Heaton, and myriad district courts have recently applied § 1226(a) to govern detention of noncitizens like Petitioner.[4] *See Norboev v. Lyons*, No. CIV-26-107-SLP, 2026 WL 497800, at *2 (W.D. Okla. Feb. 23, 2026) (finding § 1226(a) governs a similarly situated petitioner's detention and "join[ing] the decision reached by the vast majority of district courts in this judicial district, in district courts within the Tenth Circuit and across the country to have

---

[4] *See, e.g., Lopez*, 2026 WL 165490, at *7; *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Valdez*, 2025 WL 3709021, at *3; *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *5 (W.D. Okla. Dec. 16, 2025); *Urbina Garcia v. Holt*, No. CIV-25-1225-J, 2025 WL 3516071, at *4 (W.D. Okla. Dec. 8, 2025). Two Judges in the District have applied § 1225(b)(2)(A) to a similarly situated petitioner. *See Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026); *Alvarado Montoya*, No. CIV-25-01231-JD, 2025 WL 3733302, at *12 (W.D. Okla. Dec. 26, 2025).

addressed the same issues as those raised by Petitioner"). This Court has found the plain language, legislative history, and past immigration practices all support a finding that "Petitioner's detention is not governed by §1225(b)(2)." *Lopez*, 2026 WL 165490, at \*7. The undersigned agrees with this Court's reasoning, the majority of Judges in this District, and the great weight of authority to conclude Petitioner falls within the confines of § 1226(a), and not § 1225(b)(2)(A).[5] This conclusion is also in accord with the Second, Seventh, and Eleventh Circuits, which rejected the statutory interpretation of § 1225(b)(2) as typically urged by Respondents. *See Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, --- F.4th ---, 2026 WL 1243395, at \*21 (11th Cir. May 6, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, --- F.4th ---, 2026 WL 1223250, at \*10-22 (7th Cir. May 5, 2026); *Cunha v. Freden*, No. 25-3141-PR, --- F.4th ---, 2026 WL 1146044, at \*2 (2d Cir. Apr. 28, 2026). *But see Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026) (agreeing with Respondents' interpretation); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 501-08 (5th Cir. 2026) (same).

Accordingly, the undersigned recommends the Court apply § 1226(a) to govern Petitioner's current detention. The Court should grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) before a neutral IJ within five business days or otherwise release him if he does not have a lawful bond hearing

---

[5] This conclusion is further supported by the fact Petitioner was detained and later released on his own recognizance under § 1226 in May 2023. Resp. at 2; Doc. 8-2 at 2; *see, e.g.*, *Bello Chacon v. Hermosillo*, No. 25-CV-02299, 2025 WL 3562666, at \*2 (W.D. Wash. Dec. 12, 2025) (finding petitioner's prior release under § 1226 indicates he "was—and continues to be—subject to discretionary detention under § 1226").

within that period.

**B.    Due Process also entitles Petitioner to a bond hearing.**

Petitioner also alleges his detention without an individualized bond hearing violates due process. Pet. at 6-7. As a separate ground for reaching a bond hearing, the undersigned concludes that because § 1226(a) applies to Petitioner's detention, he is owed the due process provided to him under the statute. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025).

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed a noncitizen. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the

9

fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  All three factors weigh in Petitioner's favor.[6]

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified).  "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being free from detention.  *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)).

Second, the risk of erroneous deprivation is high here, considering Respondents' current position to afford him no bond hearing.  *See, e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second

---

[6] The undersigned notes Respondents have not addressed any of the *Mathews* factors directly.  Nonetheless, the undersigned has considered arguments made by respondents in substantially similar cases and concludes the outcome would be the same.

*Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a) and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest.").

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh his liberty interest or risk of erroneous deprivation. *See Montero Cordova*, 2026 WL 867689, at *10 (finding though "the Government's interest in enforcing its immigration policies must be afforded considerable weight," the third factor favors petitioner because "the fiscal and administrative burdens of providing a bond hearing under § 1226(a) are minimal and do not provide adequate justification for foregoing the hearing entirely"); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (comparing the "quite limited" harm to government, "because the administrative burden of a bond hearing is minimal," to the "sizeable harm posed to [petitioner] by continued—and potentially unnecessary—detention" (citation modified)).

Bond hearings "are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Singh v. Bondi*, No. 26-CV-0125, 2026 WL 690013, at *6 (W.D. Tex. Mar. 6, 2026). Though in ICE detention for several weeks, Petitioner has had no meaningful opportunity for an immigration judge to consider whether he is a danger to society or a flight risk since his re-detention. *See* Doc. 2 at 4. Further, the fact Petitioner has been living in the United States for approximately three years weighs in his favor. *See Ekenge v. Baltazar*, No. 26-CV-00630, 2026 WL 617341, at *5 (D. Colo. Mar. 5, 2026) (finding the government's interest "not substantial" where petitioner was re-detained after being released and "any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue" (citation modified)).

Accordingly, Petitioner's continued detention without a bond hearing violates his due process liberty interests, and he is entitled to a prompt bond hearing before an IJ.

### C.    The Court should order the government to bear the burden of proof at Petitioner's bond hearing.

Petitioner further alleges he is "detained by ICE under an immigration hold without receiving a bond hearing at which the government bears the burden of demonstrating that detention is justified." Pet. at 7. A noncitizen generally has the burden at a bond hearing to show his "release would not pose a danger to property or persons" and he "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

As discussed above, the Court should grant habeas relief in part and grant Petitioner a bond hearing because his detention is governed by § 1226(a) and due process requires it. As for the burden of proof at a bond hearing, the Court should adopt a common approach

of other courts in the Tenth Circuit and nationwide and use the *Mathews* balancing test to assess "the type of process required in a given case." *Vizguerra-Ramirez v. Baltazar*, No. 25-CV-00881, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025); *see also, e.g.*, *Velasquez Salazar*, 806 F. Supp. 3d at 1245 (holding the *Mathews* framework supports shifting the burden at a § 1226 bond hearing to the government); *Hernandez-Lara*, 10 F.4th at 39 (holding the government bears the burden at a bond hearing after prolonged detention under § 1226(a)); *Velasco Lopez,* 978 F.3d at 854 (same). *But see Miranda v. Garland*, 34 F.4th 338, 358-65 (4th Cir. 2022) (applying *Mathews* to conclude due process does not require the government to bear the burden at a § 1226(a) bond hearing for a noncitizen whose detention is not "indefinite and potentially permanent").

Under the circumstances presented here, the undersigned concludes all three *Mathews* factors favor Petitioner and placing the burden of proof on the government at any bond hearing under § 1226(a). First, as discussed above, Petitioner has a fundamental interest in liberty and being free from official restraint. *See Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1283 (D.N.M. 2026) (D.N.M. Jan. 12, 2026) (finding the first *Mathews* factors weighs in favor of the government bearing the burden of proof because "being free from detention is the most elemental of liberty interests" (citation modified)). Accordingly, the first *Mathews* factor favors Petitioner.

Second, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" also favor Petitioner. *Mathews*, 424 U.S. at 335. Notably, requiring Petitioner to bear the burden of proof creates a risk of an erroneous deprivation where Respondents have re-

13

detained him for several weeks without a clear justification for re-detention based on flight risk or danger to the community. Petitioner had been released from ICE custody, lived in the country since 2023, had been actively going through immigration proceedings, and has no alleged criminal history. ICE's decision to change course, re-detain Petitioner for several weeks now, and deprive him of physical liberty without having to establish a basis for re-detention weighs in Petitioner's favor. *See Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the "risk is even more pronounced" where petitioner had been released on bond previously and requiring the government to justify detention "reduces the risk of an ongoing and erroneous deprivation of Petitioner's liberty"); *Garcia Cortes v. Noem*, No. 25-CV-02677, 2025 WL 2652880, at *4 (D. Colo. Sep. 16, 2025) (finding "a severe risk of erroneous deprivation" based in part on respondents' "failure to identify any criminal record or conviction Petitioner has incurred").

Additionally, assigning the burden of proof to Petitioner puts him in a "difficult" position of "proving a negative," *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183-84 (D. Colo. 2024)—specifically, proving he is neither a flight risk nor a danger to the community despite his nearly three years of living openly in the country and his apparent compliance with ICE conditions. To the extent the government may contend risk factors warrant Petitioner's continued detention, the information establishing those risks is likely within the government's possession. *Accord Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4 (W.D. Okla. Feb. 20, 2026) (noting information justifying a noncitizen's re-detention would be contained in the government's own files rather than in the possession of a petitioner detained in ICE custody). Thus, requiring the government to bear the burden

14

for Petitioner's continued detention helps to cure "the risk of an erroneous deprivation," *Mathews*, 424 U.S. at 335, of his liberty interests after the government's unilateral decision to re-detain him. The second *Mathews* factor favors Petitioner.

Finally, "the administrative burden of a bond hearing is minimal." *Arostegui-Maldonado*, 794 F. Supp. 3d at 943. Having determined a bond hearing must be held, any additional costs from shifting the burden of proof to the government are negligible. Placing the burden of proof on the government promotes the government's interest in "minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Moreover, Respondents have not alleged or demonstrated any changed circumstances since Petitioner's previous release in May 2023 to support his recent re-detention. *See Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the third factor supports shifting the burden to the government because "the Government has not demonstrated any change in circumstances" since petitioner's prior release on bond).

In sum, all three *Mathews* factors support shifting the burden of proof at Petitioner's bond hearing to the government. The undersigned acknowledges that due process may not require this result in all cases. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (recognizing habeas corpus as "an adaptable remedy" where the "precise application and scope" can "change[] depending upon the circumstances"). But in cases like this, where Petitioner was previously released years ago and ICE re-detained him without any allegation that he violated the law or conditions of release, the burden should be shifted to the government at a bond hearing to justify his continued detention.

Several Judges in the Circuit have determined the proper remedy for a due process violation under similar circumstances is to require the government at a § 1226(a) hearing to bear the burden to prove a petitioner is a flight risk or danger to the community by clear and convincing evidence. *See Mieles-Parraga v. Bondi,* No. 26-CV-00646, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (shifting the burden to the government to prove petitioner is a flight risk or danger to community where petitioner had previously been released on bond); *Abanil v. Baltazar*, No. 25-CV-4029, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026) (holding "the weight of authority in this District is clear: it is the Government's burden to justify a noncitizens continued detention at a bond hearing" (citation modified)); *Requejo Roman*, 816 F. Supp. 3d at 1282-84 (shifting the burden to the government to prove petitioner is a flight risk or danger to community by clear and convincing evidence where petitioner had previously been released on bond); *Vizguerra-Ramirez*, 2025 WL 3653158, at *16 (applying § 1226(a) to a similarly situated petitioner and ordering a bond hearing at which "the Government must prove by clear and convincing evidence that [he] is either a flight risk or a danger to the community in order to justify continued detention"); *L.G.*, 744 F. Supp. 3d at 1186 ("In sum, in order to continue detaining Petitioner under § 1226(a), due process requires that the Government is required to establish that continued detention is justified by clear and convincing evidence.").

In this District, Magistrate Judges have recently recommended burden shifting in circumstances like Petitioner's, though no District Judge has yet concluded the government should bear the burden at a bond hearing to justify detention. *See, e.g.*, *Juela v. Warden, Diamondback Corr. Facility*, No. CIV-26-501-G, Doc. 17, at 10 (W.D. Okla. Apr. 30,

16

2026) (R&R) (Judge Mitchell recently recommending shifting the burden to the government to justify detention by clear and convincing evidence of flight risk or danger to the community); *Ibragimov v. Mullin*, No. CIV-26-702-SLP, Doc. 17, at 11-17 (W.D. Okla. Apr. 29, 2026) (R&R) (Judge Erwin recently recommending the same); *Singh v. Grant*, No. CIV-26-88-G, Doc. 14 at 17-22 (W.D. Okla. Mar. 30, 2026) (R&R) (Judge Maxfield recently recommending the same); *see also Drozdov v. Lyons*, No. CIV-26-365-SLP, Doc. 12 at 13-19 (W.D Okla. Apr. 3, 2026) (R&R) (the undersigned recommending the same). *But see, e.g., Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) (denying petitioner's request for burden shifting, and holding "although petitioner is entitled to a bond hearing under § 1226(a), the Court declines to specify or alter the burden of proof at this stage") (citation modified); *Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *1-2 (W.D. Okla. Apr. 16, 2026) (declining to reach due process issues and concluding burden shifting to the government in a § 1226(a) bond hearing is premature and not ripe for adjudication before a bond hearing has been conducted).

The undersigned's recommended approach is consistent with other contexts where the government must justify a person's detention by clear and convincing evidence to meet due process demands. *See, e.g., Foucha*, 504 U.S. at 86 (confinement of "insanity acquittees who are no longer mentally ill"); *Addington v. Texas*, 441 U.S. 418, 432-33 (1979) (involuntary civil commitment proceedings to a mental hospital); *see also Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982) (requiring clear and convincing evidence for termination of parental rights); *Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276,

17

286 (1966) (requiring clear and convincing evidence for deportation of a noncitizen); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (requiring clear and convincing evidence for denaturalization of an individual).

In coming to this recommendation, the undersigned has considered the burden of proof applicable to the government for pre-trial detention of a criminal defendant under the Bail Reform Act. In that context, "the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (citation modified); *see, e.g.*, *Garcia v. Bondi*, No. 26-CV-01012, 2026 WL 835766, at *4 (D. Colo. Mar. 26, 2026) (applying burden of proof from criminal pre-trial detention to immigration habeas proceedings and "finding no persuasive justification to conclude that a noncitizen must face different standards for the same actions, depending upon the forum, i.e., an administrative charge for removal versus a criminal charge of illegal reentry" (citation modified)). The undersigned has also considered the approach akin to Judge Mitchell's recent Reports and Recommendations, where she concluded after review of the *Mathews* factors that a similarly situated petitioner should be immediately released and not re-detained without a pre-deprivation hearing. *See, e.g., Rodriguez-Navarrete v. Mullin*, No. CIV-26-224-SLP, Doc. 11, at 14-17 (W.D. Okla. Apr. 3, 2026) (R&R).

The undersigned is persuaded after a careful *Mathews* analysis to recommend the predominant view from judges in this Circuit—that a detainee like Petitioner is entitled to a § 1226(a) bond hearing where the government bears the burden of proof by clear and

18

convincing evidence for his continued detention.   Accordingly, at Petitioner's bond hearing, the government should bear the burden to prove by clear and convincing evidence that he is either a flight risk or a danger to the community to justify continued detention.

### D.    The proper remedy is a bond hearing.

Finally, the undersigned acknowledges Petitioner does not request a bond hearing and instead only seeks "release on reasonable conditions of supervision pending removal proceedings." Pet. at 8.  However, Petitioner also prays the Court "grant all other relief the Court deems just and proper." *Id.*  Consistent with the common approach in other cases in this District, the undersigned recommends Petitioner be afforded a constitutionally sufficient bond hearing as a lesser remedy than release. *See Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("As a remedy, Petitioner requests his immediate release, but the Court concludes that a bond or custody redetermination hearing is the appropriate remedy." (citing *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))).  As Judge Russell in this District has previously acknowledged, "Petitioner is entitled to the custody procedures provided by [§ 1226(a)]," and "the statute provides the Department of Homeland Security the discretion to either detain a noncitizen or release the noncitizen on bond." *Id.* (citation modified).  As such, "an individualized custody redetermination hearing would provide Petitioner with the process he is due under the statute." *Id.* (citation modified).  Further, Petitioner has not alleged or provided evidence that the circumstances of the revocation of his release or of his re-detention entitle him to release rather than a bond hearing. *See Singh v. Mullin*, No. CIV-26-471-SLP, Doc. 13 at 4 (W.D. Okla. May 7, 2026) (finding petitioner is entitled to a bond hearing but not

release because he "has not provided the Court with evidence of his prior Order of Release or its terms, nor has Petitioner supported his requested form of relief with legal authority"). Accordingly, based on Petitioner's arguments and consistent with Judge Russell's approach, the undersigned recommends Petitioner be afforded a constitutionally sufficient individualized bond hearing pursuant to § 1226(a).

**E.    The Court should decline to address Petitioner's remaining claim.**

Petitioner also appears to allege his detention is unlawful because it is "prolonged and arbitrary" and he was transferred to a state where he has no prior connection. Pet. at 7; *see also* Doc. 2 at 5 (same). If the Court grants Petitioner's requested relief for a bond hearing pursuant to § 1226(a) and due process, the undersigned recommends the Court decline to decide the merits of Petitioner's additional claim because he does not request a different remedy and even if his Petition were granted on this count, it would result in the same relief as recommended herein. *See, e.g.*, *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at \*6 n.3 (W.D. Okla. Dec. 16, 2025) (declining to decide the merits of a petitioner's due process claim when granting a bond hearing pursuant to § 1226(a)).[7]

## V.    Petitioner's Pending Motion for Temporary Restraining Order

On March 31, 2026, Petitioner filed his Motion for Temporary Restraining Order seeking the same relief requested in the Petition and prohibiting Respondents from transferring or deporting him pending the resolution of this Petition. Doc. 2 at 5-7.

---

[7] Further, to the extent Petitioner alleges his arrest was unlawful because he was not given notice prior to his re-detention, the Court should also decline to address this claim because any harm would be remedied by an individualized bond hearing.

Considering the relief recommended in this Report and Recommendation, the Court should **DENY as moot** Petitioner's Motion for Temporary Restraining Order.

## VI.     Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner within five business day a bond hearing under 8 U.S.C. § 1226(a) at which the government bears the burden of proof or otherwise release Petitioner if he has not received a lawful bond hearing within that period.  The undersigned further recommends the Court require the government to bear the burden at any bond hearing to prove by clear and convincing evidence that Petitioner is either a flight risk or a danger to the community to justify continued detention.  Finally, the Court should order Respondents to certify compliance by filing a status report within seven business days of the Court's order.  In addition, the Court should **DENY as moot** Petitioner's Motion for Temporary Restraining Order, Doc. 2.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objection must be filed not later than **May 15, 2026**.  *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party wishes to respond to the other party's objections, such response must be filed not later than **May 20, 2026**.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

21

**ENTERED** this 8th day of May, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE